UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MATTHEW E. HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-CV-3233 |
| | ) | |
| DR. KIMBERLY BIRCH and DR. OBAISI, | ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, alleges deliberate indifference to his serious medical needs regarding his foot during his incarceration in the Illinois Department of Corrections. Now before the Court is Defendants' motion for summary judgment. Because Defendants' motion demonstrates that they were not deliberately indifferent to any of Plaintiff's medical needs, Defendants' motion will be granted.

1

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light

most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## FACTS

Plaintiff came to the IDOC on November 24, 2009, where he was first taken to Stateville Correctional Center. His medical condition was described as insulin-dependent, type II diabetes, high blood pressure, and a gunshot wound from July of that year, with artery repair. (Defs.' Undisp. Facts 2-3, d/e 130.) He was transferred to Vienna Correctional Center on December 28, 2009, where his medical records noted that he had blisters and corns on his feet. (Defs.' Undisp. Fact 5, d/e 130.)

The next month Plaintiff told a nurse that foot surgery had been recommended for him by a podiatrist, and he asked if he could wear tennis shoes instead of the standard issue prison shoes. A medical record from a podiatrist dated October 10, 2008, over one year before Plaintiff's incarceration, appears to reflect that Plaintiff presented complaining of a

callus on his right foot, gradually worsening over two years. The records appear to reflect that an x-ray uncovered some kind of bone deformity in Plaintiff's right foot, and that the podiatrist discussed surgical options with Plaintiff. (10/10/08 History & Physical form, p. 2, Plf.'s Exhibit, d/e 149).

Defendant Dr. Birch first saw Plaintiff on January 15, 2010, in Vienna Correctional Center at the diabetes clinic. Plaintiff complained of a callus on his right foot. Dr. Birch prescribed high blood pressure medication, baby aspirin, insulin, and right foot soaks. Dr. Birch saw Plaintiff ten days later, again for the callus on his right foot. She soaked his foot, shaved down the callus, applied salicylic acid and a cover pad. According to Dr. Birch, Plaintiff reported "feels much better," but Plaintiff denies saying this. (Pl.'s Dep. p. 34, d/e 130.) Dr. Birch saw Plaintiff again about three weeks later, on February 8, 2010, to reevaluate the callus. She repeated the treatment she had given at Plaintiff's prior visit. Plaintiff testified in his deposition that he told Dr. Birch that her treatments would not fix the problem because he had a

deformity in his foot which required surgery to fix.

Plaintiff had several other visits to the medical unit at Vienna Correctional Center during March and April, 2010, but those visits did not deal with Plaintiff's foot. (Defs.' Undisp. Facts 22-26, d/e 130.) Dr. Birch saw Plaintiff on May 4, 2010 in the diabetes clinic, where Dr. Birch stressed to Plaintiff the importance of controlling his diabetes. A few weeks later, on May 26, 2010, Dr. Birch again shaved Plaintiff's right foot callus. Plaintiff was paroled from Vienna Correctional Center two days later, on May 28, 2010.

In Dr. Birch's opinion, Plaintiff had good blow flow and pulses in his feet, and he did not need a referral to a podiatrist, foot surgery, or diabetic shoes at any time while the doctor was responsible for Plaintiff's care. (Birch Aff. ¶ 33, d/e 130-1.)

Plaintiff wound up back in the IDOC about two months after he was paroled. This time he was sent to Logan Correctional Center, where Defendant Dr. Obaisi worked. On August 17, 2010, Dr. Obaisi reviewed Plaintiff's records and prescribed high blood pressure medicine, a baby

aspirin, and daily blood sugar readings. He also directed Plaintiff to be scheduled in the diabetes clinic. About one week later, Dr. Obaisi personally examined Plaintiff, who was requesting a low bunk and diabetic shoes. Dr. Obaisi prescribed a low bunk, a new insulin prescription, a hemoglobin A1C test, and a puma bar for Plaintiff's foot calluses. Dr. Obaisi prefers not to use a knife to scrape calluses because of the risk of infection. (Obaisi Aff. ¶ 42, d/e 130-3.)

Dr. Obaisi next saw Plaintiff on September 16, 2010, again noting the Plaintiff had foot calluses. He again directed Plaintiff to use the puma stone after showering. Five days later Dr. Obaisi saw Plaintiff in the diabetes clinic and noted in the record that Plaintiff had "good pulses and sensations in his foot." (Defs.' Undisp. Fact 48, d/e 130). He also prescribed an additional diabetes medicine and another hemoglobin A1C test.

Dr. Obaisi saw Plaintiff on October 1, 2010, in response to Plaintiff's complaints about his feet. Plaintiff contends that he told Dr. Obaisi about his foot deformity and the need for surgery. However, in

Dr. Obaisi's medical opinion, no objective medical evidence supported the need for a referral to a podiatrist, surgery, or diabetic shoes. According to Dr. Obaisi, Plaintiff had no diabetic neuropathy and had good sensation in his feet. (Defs.' Undisp. Facts 50-51, d/e 130.)

In November, 2010, Plaintiff had laser eye surgery, for a reason not explained in Defendants' motion. On November 5, 2010, Dr. Obaisi saw Plaintiff for a follow up from that surgery, when Plaintiff asked for tennis shoes. Dr. Obaisi issued him a permit to buy tennis shoes.

Plaintiff was released from Logan Correctional Center on or around December 27, 2010. In April, 2011, Plaintiff visited podiatrist Dr. Blyumin, who scheduled surgery for an osteotomy. (Pl.'s medical progress notes dated 4/1/11, d/e 149, p. 3.) However, a few days later the surgery was postponed to clear up an ulceration on Plaintiff's foot. Id. In June, 2011, Plaintiff had the surgery on his right foot, which Plaintiff maintains fixed the problem. (Pl.'s medical progress notes dated 6/2/11, d/e 149, p. 9.) However, his medical records after that surgery reflect continued and significant problems with infection, swelling, failure to

show for post-operative appointments, and failure to follow post-operative instructions.  (Pl.'s medical progress notes dated 6/10/11-10/14-11, d/e 149, p. 3.)

## ANALYSIS

Plaintiff's claim falls under the Eighth Amendment to the Constitution, which prohibits cruel and unusual punishment.  In the context of medical care for prisoners, cruel and unusual punishment occurs when a Defendant is deliberately indifferent to a serious medical need of a prisoner:

> A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett*, 658 F.3d at 750. Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." Id. at 751.

Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).  A condition can be considered serious if, without treatment, the plaintiff suffered "'further significant injury or unnecessary and wanton infliction of pain.'" Id.

Plaintiff describes his care in prison as malpractice, but malpractice does not amount to a constitutional violation. Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006). "A negligent or inadvertent failure to provide adequate medical care is insufficient to state a . . . [constitutional] claim . . . . 'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. . . .'" Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002)(quoted cites omitted). A malpractice action is a state law claim. For Plaintiff to pursue a malpractice claim under state law he would have had to submit a physician's report finding some merit to the claim, which he has not done. 735 ILCS 5/2-622. Thus, only the Eighth Amendment claim is before the Court.

Discerning a serious medical need during Plaintiff's two short stints in prison is difficult. Plaintiff's own medical records from the podiatrist do not show that surgery was recommended. Those records show only that surgical options were discussed, and none of those records suggest any pressing time line. Nor did Plaintiff appear to be in a hurry to get

the surgery when he was out of prison. His podiatrist records are from 2008, a full year before Plaintiff's incarceration, and Plaintiff had been living with the callus for two years before he went to the podiatrist. Plaintiff was under the care of each Defendant for only about five months, with a two month separation in between, during which time he does not appear to have attempted to obtain medical care for his foot. Plaintiff was in no danger of amputation, as he asserts, and there is no evidence of infection during his incarcerations. His foot problem was not caused by his diabetes, but by a deformation of the foot bones. The infections that are reported in the medical records occurred months after Plaintiff was released and after he had the surgery.

   Even assuming Plaintiff's own description of his foot pain amounted to a serious medical need, Defendants were not deliberately indifferent to that need. During these five month stints of incarceration, each Defendant personally examined Plaintiff's foot, determined that the circulation in the foot was good, and prescribed treatment to help reduce the calluses. Plaintiff has no evidence that this treatment approach was

outside the standard of care, much less that the approach was a "substantial departure from accepted professional judgment." Estate of Cole v. Pardue, 94 F.3d 254, 261-62 (7th Cir. 1996); *see also* Collingnon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998)(deliberate indifference may be established if "response so inadequate that it demonstrated an absence of professional judgment, that is, that nominally competent professional would not have so responded under the circumstances."). Plaintiff's own disagreement with Defendants' treatment decisions does not support an Eighth Amendment claim. Steele v. Choi, 82 F.3d 175, 178-79 (7th Cir. 1996). The fact that Plaintiff had surgery seven months after his last release does not support an inference that Defendants were deliberately indifferent. As discussed above, Plaintiff has no evidence that his surgery was anything other than elective. Additionally, his medical records actually demonstrate the risks of such surgery, such as the swelling and infection Plaintiff experienced.

IT IS THEREFORE ORDERED:

    1) Defendants' motion for summary judgment is granted (d/e 130).

The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:     August 22, 2012

FOR THE COURT:

                                           s/Sue E. Myerscough
                                           SUE E. MYERSCOUGH
                                           UNITED STATES DISTRICT JUDGE